UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES,

        -against-

RAYMOND CASTRO,

        Defendant.
----------------------------------------------------------X

MEMORANDUM OF DECISION & ORDER
2:06-CR-478 (SJF) (MLO)
2:16-CV-02956 (SJF) (MLO)

FILED
CLERK
7/15/2020 2:38 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

**United States Attorneys Office, Eastern District of New York**
*Attorneys for the United States*
610 Federal Plaza
Central Islip, NY 11722
        By:    James G. McGovern, Assistant United States Attorney,
                  Monica J. Castro, Assistant United States Attorney.

**Federal Public Defenders of New York, Inc.**
*Attorneys for the Defendant*
770 Federal Plaza
Central Islip, NY 11722
        By:    LeKeytria W. Felder, Esq. (*Pro Hac Vice*),
                  Tracey E. Gaffey, Esq., Of Counsel.

**FEUERSTEIN, District Judge**:

        Defendant Raymond Castro (the "Defendant") pleaded guilty, pursuant to a plea agreement, to distribution of at least five grams of cocaine base, 21 U.S.C. §§841(a)(1) and (b)(1)(B), as part of a larger drug conspiracy. The plea agreement contained an appeal waiver (the "Appeal Waiver") that, *inter alia*, barred the Defendant from collaterally attacking his conviction or sentence if the Court imposed a sentence of fewer than 262 months' imprisonment. At sentencing, the Court deemed the Defendant a Career Offender under United States Sentencing Guideline ("U.S.S.G.") § 4B1.1, based on two prior convictions: an October 1998 conviction for

1

the sale of a controlled substance, and an April 1989 conviction for attempted assault. The Court sentenced the Defendant principally to 152 months' imprisonment.

Before the Court are two motions by the Defendant, the first *pro se* and the second through counsel, pursuant to 28 U.S.C. § 2255, to vacate his sentence. Also before the Court is a motion by the Defendant for the appointment of counsel, made before counsel appeared on his behalf. The Defendant relies on *Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), to contend that U.S.S.G. § 4B1.1, namely its residual clause, is unconstitutionally vague. He also argues, under *Shepard v United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), that the Court did not have any documents describing his predicate convictions for the Career Offender designation. The Government opposes the motions, arguing that the Appeal Waiver bars the Defendant's § 2255 motion, and, that in any event, the motions lack merit.

The motions fail on both procedural and substantive grounds. The *Shepard* claim is untimely and the Defendant has procedurally defaulted as to that claim, which was available to him at the time of his sentencing. The Appeal Waiver also bars that claim even if it were timely. The Appeal Waiver further bars the *Johnson* claim. The *Johnson* claim is also lacking in merit. Accordingly, the Court denies the Defendant's motion, declines to issue a certificate of appealability, and closes the case. In addition, the Court denies as moot the Defendant's motion to appoint counsel.

## I. BACKGROUND

### A. The Indictment and The Defendant's Guilty Plea

The Court assumes familiarity with the background of this case. However, by way of a review, the Defendant distributed 8.21 net grams of cocaine base and 1.40 net grams of cocaine between August 2005 and January 2006. The Defendant made some of those transactions with a

confidential informant. In July 2006, a grand jury returned an indictment that charged the Defendant and his co-Defendants with conspiring to distribute 50 grams or more of a substance containing cocaine base, in violation of § 841(a)(1). ECF 30.

On April 26, 2007, the Defendant pleaded guilty, pursuant to a plea agreement, to a lesser included offense of six sales of cocaine base, in violation of §§ 841(a)(1)(A) and (b)(1)(B). ECF 164-1. Under the plea agreement's Appeal Waiver, the Plaintiff agreed "not to file an appeal or otherwise challenge [his] conviction or sentence in the event that the Court impose[d] a term of imprisonment of 262 months or below." *Id.* at 24–25.

At the Defendant's plea hearing, the Court asked the Defendant if he understood the terms of the Appeal Waiver. *Id.* At first, the Defendant purported to disagree with the terms of the Appeal Waiver. *Id.* at 26. He then reconsidered, and said that he understood that the Appeal Waiver prevented him from appealing or otherwise challenging his conviction or sentence if the Court sentenced him to 262 months' imprisonment or fewer. *Id.* at 27, 35. He also said yes when asked if he was pleading guilty voluntarily, of his own free will and accord. *Id.* at 50. The Court then accepted the Defendant's guilty plea. *Id.* at 50.

### B. The Defendant's Sentencing and Direct Appeal

At the Defendant's July 30, 2007 sentencing, the Court found the Defendant to be a Career Offender under U.S.S.G. § 4B1.1. The Court based this designation on two prior convictions: (1) an October 1998 conviction for the sale of a controlled substance; and (2) an April 1989 conviction for attempted assault. The Defendant argued that the attempted assault conviction should not count as a predicate offense because it should have been adjudicated as a youthful offender conviction, and that the conviction had no relation to robbery or the sale of a controlled substance. ECF 164-2 at 9.

3

In response, an officer from the Probation Department testified that, even absent the attempted assault conviction, the Defendant would still be a Career Offender under the sentencing guidelines. *Id.* at 10–11. The Government later clarified this position to reflect that the Career Offender designation relied on both the sale of the controlled substance and the attempted assault:

> Just so the record is clear, the defendant does have one felony sale conviction and also has a prior crime of violence conviction. Based on two crimes by themselves, the crime of violence having been committed by the defendant when he was 17, that, your Honor, as per the government's calculation triggers the career offender statute.
>
> Earlier the probation officer made a statement to your Honor [that] even absent that crime of violence conviction the defendant would still be a career offender.
>
> Your honor, just so the record is clear, it's not the position, I believe, at this point, we do not have a specific understanding, and I apologize for that, about whether absent your Honor counting that 17-year-old violent crime offense, crime of violence, the defendant would still be a career offender . . . .
>
> . . . .
>
> So based on the defendant's conviction pursuant to paragraph 26 and paragraph 33 [of the Presentence Investigation Report ("PSR")], the defendant has committed a crime involving the sale of a controlled substance and committed a crime which is deemed a crime of violence. And based on those two crimes, your Honor, that triggers the defendant as being a career offender.

*Id.* at 15–16. The Defendant then argued that his attempted assault conviction did not relate to the sale of drugs. *Id.* at 17–18. The Probation Department officer then said that, pursuant to U.S.S.G. § 4B1.2, which defines the terms used in § 4B1.1, that the offense does not need to relate to substance abuse in order to satisfy as a predicate for a § 4B1.1 Career Offender designation. *Id.* at 18.

The Court then read into the record the PSR's description of the attempted assault, saying that the Defendant used a revolver and attempted to shoot an individual in the leg and the wrist. *Id.* at 19–20. The Court then accepted the facts in the PSR. *Id.* at 20–21. Although the U.S.S.G.

4

guideline range for the Defendant's sentence was 188 to 235 months, the Court sentenced the Defendant principally to 152 months' imprisonment. *Id.* at 23–24.

The Defendant appealed the judgment. ECF 65. On appeal, he challenged the Court's failing to explain its basis for departing from the applicable sentencing guidelines range. ECF 144 at 2. On February 20, 2009, the Second Circuit issued a mandate that granted the Government's motion for summary affirmance; however, it also ruled that the Court's statement of reasons in the judgment and the commitment order did not explain the basis for departing from the sentencing guidelines, as required by 18 U.S.C. § 3553(C)(2). ECF 98. The Second Circuit thus remanded the matter for the Court to make "ministerial corrections to the order." *Id.*

The Court issued an amended judgment on May 11, 2010. ECF 107. It once again sentenced the Defendant principally to 152 months' incarceration. *Id.* The Defendant did not appeal the amended judgment or petition the United States Supreme Court for a writ of certiorari.

### C. Post-Conviction Proceedings

Following the amended judgment, the Defendant moved for a sentence reduction under 18 U.S.C. § 3582(c)(2). ECF 108. The Court denied that motion on January 20, 2012. ECF 114. The Defendant appealed that order, ECF 115, and, in October 2012, the Second Circuit denied the motion and dismissed the appeal, ECF 127.

On May 31, 2016, the Defendant filed two *pro se* motions: first, to correct his sentence under § 2255; and second, for appointment of counsel. ECF 144, 145. In the habeas motion, the Defendant argued that *Johnson* invalidated his career offender designation under the sentencing guidelines. ECF 144.

The Federal Defenders of New York subsequently appeared on the Defendant's behalf. ECF 146. The Defendant, now through counsel, files a supplemental memorandum in support of

5

his § 2255 motion. ECF 159. In that supplemental memorandum, the Defendant argues that, under *Shepard*, the sentencing record fails to establish the attempted assault offense as a crime of violence, thus disqualifying it as a predicate offense for a Career Offender sentencing enhancement. ECF 159 at 6–8. The Defendant asks for the Court to resentence him in accordance with a lawful U.S.S.G. calculation and an appropriate term of supervised release. *Id.* at 9.

The Government opposes the motions, arguing that: (1) the Defendant's motion is procedurally barred in that it is precluded by the Appeal Waiver, and also untimely with regard to the *Shepard* claim; (2) that the *Johnson* claim lacks merit because those claims do not pertain to the sentencing guidelines; and (3) that the *Shepard* claim also lacks merit because the record establishes that the Court did consult the requisite documents, and that attempted assault in the first degree is a U.S.S.G. § 4B1.2(a)(1) crime of violence. ECF 164.

The Defendant did not file a reply, and the time for doing so has since expired. The § 2255 motions and the motion to appoint counsel are presently before the Court.

## II. DISCUSSION

The Court now rules on the pending motions. For the reasons that follows, the Court denies the Defendant's § 2255 motion, and denies a moot the Defendant's request for appointment of counsel.

### A. The § 2255 Standard

Section 2255(a) provides as follows:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

6

28 U.S.C. § 2255(a). To obtain relief under § 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted). In addition to showing a constitutional error, the movant must also show that the error had "substantial and injurious effect" that caused the movant "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353 (1993); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht* to a § 2255 motion).

The Supreme Court has held that to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). The discretion to grant relief under § 2255 is to be exercised sparingly, for such applications "are in tension with society's strong interest in the finality of criminal convictions." *Elize v. United States*, No, 02-CV-1530 (NGG), 2008 WL 4425286, a *5 (E.D.N.Y. Sept. 30, 2008) (internal quotation marks and citation omitted); *see also Brecht*, 507 U.S. at 633–34, 113 S. Ct. at 1719.

### B. Application to the Facts of This Case

The Court now rules on the Defendant's § 2255 motions. The Court denies the motions on both procedural and merits-based grounds. The Court addresses each of those grounds in turn.

#### 1. As to Procedural Matters

The Government argues that the appeal waiver bars both of the Defendant's claims, and that the *Shepard* claim in particular is untimely. It also asserts that the Defendant procedurally defaulted as to both claims.

As to timeliness, § 2255 motions have a one-year statute of limitations that runs from one of four possible dates. *Nunez v. United States*, 954 F.3d 465, 469 (2d Cir. 2020); *see* 28 U.S.C. § 2255(f)(1)–(4). Those four dates are the latest of:

(1)  the date on which the judgment of conviction becomes final;

(2)  the date on which the impediment to making a motion created by the governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively available to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The Defendant raises no arguments as to § 2255(f) in either of his § 2255 motions. Because the Defendant does not argue that (f)(2), (3), or (4) apply, "'and the Court does not find'" them to apply, "'the only relevant date that triggers the running of the clock . . . is the date on which the judgment of conviction becomes final.'" *Acosta v. United States*, No. 12-CR-224 (PGG), 2020 WL 2115067, at *4 (S.D.N.Y. May 2, 2020) (quoting *United States v. Jude*, No 15-CR-355 (JFK), 2019 WL 3500284, at *6 (S.D.N.Y. Aug. 1, 2019) (internal quotation marks omitted)).

The Defendant's conviction and sentence became final 90 days after the Second Circuit's February 20, 2009 mandate granting the Government's motion for summary affirmance, because the Defendant did not petition the Supreme Court for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 525, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003); *Hoyte v. United States*, No 11-CV-1548 (RJD), 2014 WL 2800763, at *2 (E.D.N.Y. June 19, 2014). Although the Second Circuit in this case remanded the matter for the Court to revise its judgment, it did so on ministerial grounds;

8

thus, the date of the Court's amended judgment does not affect the statute of limitations. *See Burrell v. United States*, 467 F.3d 160, 168 (2d Cir. 2006) ("[W]hen a remand leaves only a ministerial task for the district court to perform and the remaining counts cannot be challenged on valid grounds in the district court, the conviction becomes final for purposes of direct review upon the denial of a petition for a writ of certiorari or the expiration of the time for filing such a petition.") (citing *United States v. Dodson*, 291 F.3d 268, 275 (4th Cir. 2002). Accordingly, the Defendant's conviction and sentence became final on May 21, 2009.

The Defendant did not file his § 2255 motion raising the *Shepard* claim until October 2017, more than eight years later. Because the Defendant waited more than a year to raise this claim, he is barred from seeking § 2255 relief, on timeliness grounds. *See Acosta*, 2020 WL 2115067, at *4; *Jang v. United States*, No. 03-CV-4020 (ILG), 2004 WL 470031, at *2 (E.D.N.Y. Jan. 23, 2004). To construe the motion as raising a § 2255(f)(3) argument would be unavailing, because the Supreme Court had already ruled on *Shepard* at the time of the Defendant's sentencing. No such timeliness issue exists as to the *pro se* motion that raised the *Johnson* claim, because the Supreme Court ruled on *Johnson* in June 2015, and the Defendant filed his motion in May 2016. This makes the *Johnson* claim timely under § 2255(f)(3).

In addition, the Government alleges that Appeal Waiver bars both of the Defendant's claims. The Court agrees.

"A defendant's knowing and voluntary waiver of the right to . . . collaterally attack his conviction and/or sentence is enforceable." *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam). A waiver is knowing and voluntary where the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (internal quotation marks omitted). Although Courts will apply plea agreements "narrowly"

and "strictly against the government," *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (per curiam) (internal quotation marks omitted), "exceptions to the presumption of the enforceability of a waiver, however, occupy a very circumscribed area of our jurisprudence," *see United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). One such example of an exception is where an appeal waiver violates a fundamental right. *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011).

Here, the Defendant's § 2255 motions are bereft of any allegation that the Defendant did not knowingly or voluntarily waive his right to appeal or collaterally attack his sentence. The record reflects that the Defendant knowingly and voluntarily agreed to the Appeal Waiver. The Court engaged in the following exchange with the Defendant during the plea colloquy:

> THE COURT: Let's take another look at it.
>
> Paragraph 4: Quote, the defendant agrees not to file an appeal or otherwise challenge the conviction or sentence in the event that the court imposes a term of imprisonment of 262 months or below. This waiver is binding without regard to the sentencing analysis used by the Court.
>
> And that means that if the Court sentences you to 262 months, that's more than 20 years; do you understand that?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: 262 months or less, you cannot appeal at all; do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If I find that there's a knowing and voluntary waiver of the right to appeal, and if the Court imposes a sentence of 262 months or less; do you understand that?
>
> THE DEFENDANT: Yes, sir.

ECF 164-1 at 35. The Court reminded the Defendant of this appeal waiver at the sentencing hearing as well. ECF 164-2 at 26.

10

In addition to failing to challenge the knowing or voluntary nature of the Appeal Waiver, the Defendant also does not allege that his § 2255 motions present a narrow exception to the Appeal Waiver's enforceability. Upon examining the Defendant's claims, the Court finds no basis for finding that the Defendant seeks to raise an exception. Accordingly, the Court holds that the Appeal Waiver is enforceable, and that it bars both of the Defendant's claims. *See Garcia-Santos v. United States*, 273 F.3d 506, 608 (2d Cir. 2001) (per curiam) (affirming that an appeal waiver was knowing and voluntary where the petitioner failed to claim in § 2255 motion that he had not understood the waiver in the plea agreement); *Castillo v. United States*, No. 16-cv-5034, 2020 WL 133510, at *3 (S.D.N.Y. Jan. 13, 2020); *Elliott v. United States*, No. 17-cr-127 (ARR), 2019 WL 6467718, at *4 (E.D.N.Y. Dec. 2, 2019) ("Elliott does not argue that his waiver was not knowing or voluntary.").

The Court also holds that the Defendant has procedurally defaulted on the *Shepard* claim. He did not raise this claim on direct appeal, and the case had been decided by the time of the Defendant's sentencing. *See Wall v. United States*, 619 F.3d 152, 154 (2d Cir. 2010) (per curiam); *Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005). In addition, the Defendant fails to show cause for the failure to raise the *Shepard* claim on direct appeal, or resulting prejudice. *See Whitman v. United States*, 754 F. App'x 40, 43 (2d Cir. 2018) (summary order); *Mateo-Rivera v. United States*, No. 03-CR-157 (SJ), 2014 WL 3519181, at *5 (E.D.N.Y. July 15, 2014). Thus, there is no basis for excusing the Defendant's procedural default.

The Court does not find any procedural default as to the *Johnson* claim. Such claims receive different treatment in terms of excusing procedural default. *Aquino v. United States*, No. 13-cr-536 (PKC), 2020 WL 1847783, at *2 (S.D.N.Y. Apr. 13, 2020) ("The Court finds that there

11

was no procedural default in failing to raise a *Johnson*-type argument before *Johnson* was decided.").

**2. As to the Merits**

The Court also briefly rules on the merits of the Defendant's *Johnson* claim, observing that courts in this District have looked past an appeal waiver when such a claim is at issue. *See Leyones v. United States*, No. 10-cr-743 (ARR), 2018 WL 1033245, at *3 (E.D.N.Y. Feb. 22, 2018) (declining to resolve question in a *Johnson* claim where the § 2255 motion failed on the merits). Further, the Court need not reach the merits of the *Shepard* claim because, as noted above, it fails to clear multiple procedural hurdles: it is untimely, barred by the Appeal Waiver, and in procedural default.

With regard to the *Johnson* claim, the Government contends that *Johnson* does not apply to the U.S.S.G. ECF 164 at 5–6. In any event, the Government argues, the record reflects that the Court sentenced the Defendant under U.S.S.G. § 4B1.2's force, or elements clause, and not its residual clause. *Id.* at 6 n.2. The Court agrees.

The Supreme Court has ruled that a person may not challenge the U.S.S.G. on vagueness grounds. *Beckles v. United States*, 137 S. Ct. 886, 894, 197 L. Ed. 2d 145 (2017). In *Beckles*, the Supreme Court reasoned that the sentencing guidelines, which, following *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), are no longer mandatory and "merely guide the district courts' discretion," are akin to the earlier system of courts having "unfettered" discretion in sentencing defendants, a system that the Supreme Court had never found to be unconstitutionally vague. *Id.* at 893–94 (citing *Mistretta v. United States*, 488 U.S. 361, 363, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989); *see Estrella v. United States*, No. 08-cr-823 (KBF), 2017 WL 2470841, at *2 (S.D.N.Y. June 7, 2017) ("Second, even if petitioner had been designated a

12

'career offender' based on the portion of U.S.S.G. § 4B1.2(a)(2) that tracked the unconstitutional language in ACCA, the Supreme Court's recent decision in [*Beckles*] forecloses petitioner's argument.").

This discretionary guidelines scheme is not the same as a statute, such as ACCA, which "must specify the range of available sentences with sufficient clarity." *Beckles*, 137 S. Ct. at 892 (quotation marks omitted). In another departure from a statute such as ACCA , the U.S.S.G. "do not implicate the twin concerns underlying the vagueness doctrine," giving people notice of what constitutes criminal conduct, and preventing arbitrary enforcement. *See United States v. Watkins*, 940 F.3d 152, 160 (2d Cir 2019), *cert. denied*, 206 L. Ed. 2d 507 (Mar. 30, 2020) ("[t]he purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct of law.").

The Second Circuit has recently pondered Justice Sotomayor's concurrence in *Beckles*, which raised the question of whether defendants sentenced prior to the *Booker* holding, when the U.S.S.G. were mandatory, could bring vagueness challenges to their sentences. *See Nunez*, 954 F.3d at 468, 470 (further noting that "while we agree that *Beckles* does not foreclose a vagueness challenge to the mandatory Sentencing Guidelines, we cannot agree with Nunez that *Johnson* articulated the right he seeks to assert"). No such issue exists here, because the Court sentenced the Defendant nearly two years after the *Booker* holding.

In addition, the Court observes that the record shows the Court as considering the Defendant's attempted assault conviction not under U.S.S.G. § 4B1.2's residual clause, but under its elements clause. ECF 164-2. The Court and the probation officer had the following exchange during the Defendant's sentencing hearing:

> PROBATION OFFICER: Your honor, [the attempted assault] does not have to have a link to substance abuse.

13

>     The Definition of crime of violence is found in the commentary to be guilty under 4B1.2 in the new book on page 373.  If you'd like me to read that into the record.
>
>     THE COURT: What book is that?
>
>     PROBATION OFFICER: The most current book, your Honor, the 2006 [edition].
>
>     THE COURT: What section is that?
>
>     PROBATION OFFICER: 4B1.2, definitions of terms used in 4B1.1 for the career offender provision.
>
>     THE COURT: Okay.  Where?
>
>     PROBATION OFFICER: It would be the second paragraph on page 373.  Actually the first three paragraphs of that page.
>
>     THE COURT: Well, it includes as a crime of violence that offense [that] has an element, the use, attempted use or threatened use of physical force against the person of another.  Is that what you mean[?]
>
>     PROBATION OFFICER: Yes, your Honor.

ECF 164-2 at 18–19.

Looking beyond the record, the 2006 edition of the U.S.S.G. Manual further shows that the Court sentenced the Defendant under the § 4B1.2 elements clause.  On page 373 of the 2006 edition, the manual differentiates between crimes that "ha[ve] as an element the use, attempted use, or threatened use against the person of another," and crimes that "presented a serious potential risk of physical injury to another."  COMMENTARY ON U.S. SENTENCING GUIDELINES MANUAL §4B1.2 (U.S. SENTENCING COMM'N 2006).  Accordingly even if the Court could entertain a vagueness challenge to the U.S.S.G., the challenge would be inapplicable here.

14

### 3. As to The Motion to Appoint Counsel

Also before the Court is the Defendant's motion to appoint counsel. Since the Defendant filed that motion, the federal defenders appeared on his behalf. Accordingly, the Court denies this motion as moot.

### III.   CONCLUSION

For the foregoing reasons, the Court denies the Defendant's § 2255 motions in their entirety. The Court also declines to issue a certificate of appealability because he has not made a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Court also denies as moot the Defendant's motion to appoint counsel.

**SO ORDERED** this 15th day of July 2020 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge